BIRZNIEKS v COOPER

Docket No. 58849. Submitted November 2, 1977 (Calendar No. 11).—
    Decided February 5, 1979.

    Peter and Ella Birznieks brought summary proceedings against
    Thomas L. Cooper to recover possession of real property after
    forfeiture of two land contracts. The Ninth District Court, First
    Division, Marjorie Lee Luna, J., granted default judgments for
    the plaintiffs which determined the arrearages on the contracts
    and that the period of redemption would expire on January 30,
    1974. On that day the defendant mailed payment, which was
    received two days later, to the attorney who had been desig-
    nated as the plaintiffs' agent in the matter. The district court
    on February 1 issued a writ of restitution which had been
    requested before receipt of the letter, and denied the defend-
    ant's motion to quash the writ on the ground that the defend-
    ant had tendered payment by a personal check drawn on an
    out-of-state bank, which was not acceptable because of the
    previous course of dealing of the parties, and that mailing the
    checks on the last day of redemption was not timely. The
    Kalamazoo Circuit Court, Donald T. Anderson, J., affirmed, and
    the Court of Appeals, R. B. Burns, P.J., and M. J. Kelly and
    S. S. Hughes, JJ., affirmed (Docket No. 25262). Defendant ap-
    peals on the question whether mailing the defendant's check on
    the last day of the time provided for redemption is timely
    payment under the statute. *Held:*

        Mailing within the time prescribed is timely. The governing
    statute provides that a writ of restitution shall not issue if,
    "within the time provided", the amount due is "paid" to the
    plaintiff.

        1. The law of tender and course of dealing in contract cases is

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts § 272.
    74 Am Jur 2d, Tender §§ 1, 6.
[2, 4, 7, 9] 17 Am Jur 2d, Contracts §§ 251, 257.
    77 Am Jur 2d, Vendor and Purchaser §§ 77, 589.
[3] 77 Am Jur 2d, Vendor and Purchaser § 408.
[5] 77 Am Jur 2d, Vendor and Purchaser § 406.
[6, 7] 60 Am Jur 2d, Payment § 11.
[8] 17 Am Jur 2d, Contracts §§ 35, 48.

not appropriate where rights are fixed by statute without regard to the expectations of the parties. A fixed meaning must be given the statutory terms "within the time provided" and "paid". No agreement between the parties can deprive a vendee or tenant of his right to cure the default. The parties are beyond the contract. It would be anomalous if a vendee's or tenant's right to pay by personal check or to send it by mail on the last day for payment were dependent on the idiosyncrasies of a particular vendor-vendee or landlord-tenant relationship. On the other hand, it does not follow that the words should be given an entirely formalistic meaning or that the customary manner of dealing should not be reflected in the construction. If the remedial purpose of the statute and the informational purpose of the court rule are to be fully implemented, the words "within the time provided" and "paid" should be given a construction consonant with what vendees and tenants would understand although that departs from what lawyers and judges and those counseled by them might understand.

2. A customary means of payment is by personal check, and the means of transmittal customarily employed, whatever the form of payment, is the mails. The debtor is not expected to seek out the creditor and put the instrument of payment in his hand. Mailing on the last day is recognized for many purposes to be timely and, as a result, it is widely thought that communications postmarked on the last date are timely. There is no "clear and plain meaning" requiring actual receipt in hand by the end of the last day. The meaning sought is that which vendees and tenants would understand, not lawyers. The meaning will govern not only land contract forfeitures, but also forfeiture of a tenancy, in which there is only ten days for redemption. To ascribe to the terms a meaning requiring actual delivery within the time provided would virtually require a tenant to make personal delivery or to mail payment almost immediately upon rendition of the judgment. Therefore mailing within the time prescribed is timely.

3. There are no intractable problems in treating the mailing of personal checks as payment, or in a timely mailed letter arriving after the day of "forfeiture". In cases where, because of a course of dealing, personal checks or mailing within the time provided or both have been treated as timely payment, receipt of the check is deemed to constitute a conditional payment, the condition being that the check be honored on presentment; if it is honored the payment is deemed to have been timely made. Insurance policies which have expired are routinely reinstated upon receipt of payment out of time.

Cooper "paid" the amounts owing "within the time provided"

when he mailed personal checks for the amounts stated in the judgments to the Birznieks' lawyer.

Reversed and writs quashed.

Justice Ryan, joined by Justice Fitzgerald, dissented. The Court has expanded the phrase "within the time provided" to include the time period provided plus the ordinary course of the mails. In so doing, it attempts to adapt the "mailbox rule" to a wholly inapposite situation. The mailbox rule was created to provide a fixed guide for determining when an offer has been accepted to form a contract, and its underlying reason is that as between two innocent parties, one of whom must bear the risk of an acceptance which is mailed but not timely received, the burden should be placed on the offeror because he can control the risk by the terms of his offer. That is not the situation in summary proceedings, in which a party who has been formally adjudged to be in default on an existing contract is by statute provided a period of time in which to cure the default. The Court reads the statutory language as placing what risk there is of late receipt of the money found due upon the land contract seller, who has no power to control or avoid such a risk. If the default is cured "within the time provided", possession of the premises will remain in the purchaser and the land contract will be reinstated. The purchaser, the party in default, controls the result. The risk distribution rationale of the mailbox rule does not support allowing such a purchaser to make "timely" payment by placing payment in the mails on the last day of the time provided. The plain meaning of the words "within the time provided" is understood and understandable by purchasers in default on a land contract, as well as other lay persons, legislators, and lawyers, to be that payment must be actually received by the seller on or before the last day provided for payment in the judgment awarded. Clearly, in these land contract default situations, time is of the essence because the Legislature has made it so in recognition of the fact that the seller with a valid judgment has been placed in the anomalous position of waiting a specified period of time without benefit of possession of the premises and with the risk that payment may not be made in that period of time.

70 Mich App 482 (1976) reversed.

OPINION OF THE COURT

1. TENDER — PAYMENT — COURSE OF DEALING — WORDS AND PHRASES.

Tender generally is the payment in hand of legal currency; however, in contractual relationships actual delivery of legal currency is not required where there is a course of dealing

which justifies the debtor in believing that some other means *(e.g.,* mailing) and form of tender *(e.g.,* personal check) will suffice.

2. VENDOR AND PURCHASER — LAND CONTRACTS — SUMMARY PROCEEDINGS — REDEMPTION — TENDER — STATUTES.

The statute governing summary proceedings to recover possession of real property after forfeiture of a land contract provides that a writ of restitution shall not issue if, "within the time provided", the amount due is "paid" to the plaintiff, and the statutory terms must be given a fixed meaning; the law of tender and course of dealing in contract cases is not appropriate where rights are fixed by statute without regard to the expectations of the parties (MCL 600.5744[6]; MSA 27A.5744[6]).

3. VENDOR AND PURCHASER — LAND CONTRACTS — LANDLORD AND TENANT — SUMMARY PROCEEDINGS — REDEMPTION — STATUTES.

No agreement between the parties can deprive a land contract vendee or a tenant of his right to cure a default on his contract or lease during the redemption period provided by the act governing summary proceedings to recover possession of real property; the parties are beyond the contract (MCL 600.5744[6]; MSA 27A.5744[6]).

4. VENDOR AND PURCHASER — LAND CONTRACTS — LANDLORD AND TENANT — SUMMARY PROCEEDINGS — REDEMPTION — STATUTES — CONSTRUCTION.

The words "within the time provided" and "paid" in the statutory provision for the redemption period following a judgment in summary proceedings to recover possession of real property should be given a construction consonant with what land contract vendees and tenants would understand, although that departs from what lawyers and judges and those counseled by them might understand, in order to implement fully the remedial purpose of the statute and the informational purpose of the court rule concerning a judgment for possession (MCL 600.5744[6]; MSA 27A.5744[6]; DCR 7547).

5. VENDOR AND PURCHASER — LAND CONTRACTS — SUMMARY PROCEEDINGS — WRIT OF RESTITUTION — STATUTES.

The last judicial act in most land contract forfeitures in summary proceedings for possession of land is issuance of a writ of restitution; it is ultimately for the Supreme Court to decide the procedure for issuance of the writ that serves the Legislature's substantive purpose and the fair and efficient administration of

justice (Const 1963, art 6, § 5; MCL 600.5744[6]; MSA 27A.5744[6]).

6. TENDER — PERSONAL CHECK — CONDITIONAL PAYMENT.

Receipt of a personal check is deemed to constitute a conditional payment in those cases where, because of a course of dealing between the parties, personal checks or mailing within the time provided or both have been treated as timely payment; the condition is that the check is honored on presentment at the bank, and if it is honored the payment is deemed to have been timely made.

7. VENDOR AND PURCHASER — LAND CONTRACTS — SUMMARY PROCEEDINGS — REDEMPTION — TENDER — PERSONAL CHECK — MAIL.

A land contract purchaser "paid" the amounts owing "within the time provided" for redemption under the summary proceedings act when he mailed personal checks for the amounts stated in the judgments for possession of the land to the vendors' lawyer within the time prescribed by the statute (MCL 600.5744[6]; MSA 27A.5744[6]).

DISSENTING OPINION BY RYAN, J.

8. CONTRACTS — OFFER AND ACCEPTANCE — "MAILBOX RULE".

*The "mailbox rule" is a fiction of law created by judges to provide a fixed guide for determining when an offer has been accepted for the purpose of forming a legally enforceable contract; it is a rule for distributing the risk of failure of the mails in timely communicating an acceptance between two innocent parties negotiating a contract by placing the risk on that party, the offeror, who had the power to avoid any such risk by specifically stating in the offer that no contract would be formed until the acceptance was actually received.*

9. VENDOR AND PURCHASER — LAND CONTRACTS — SUMMARY PROCEEDINGS — REDEMPTION — PAYMENT — STATUTES.

*Payment "within the time provided" for redemption under the summary proceedings act requires actual receipt by the land contract vendor on or before the last day provided for payment in the judgment for possession; unlike contractual situations, where time will generally be deemed to be of the essence only where the parties have expressly made it so, time is of the essence where a land contract is in default because the Legislature has made it so and, thus, payment must be made within*

*the time provided for redemption or not at all (MCL 600.5744[6]; MSA 27A.5744[6]).*

*Wickett, Erickson, Bartl & Haslett, P.C.,* for plaintiffs.

*Cholette, Perkins & Buchanan* (by *Kenneth L. Block)* for defendants.

LEVIN, J. In summary proceedings to recover real property, a writ of restitution may not issue pursuant to a judgment for possession because of nonpayment of money by a tenant or land contract vendee if, "within the time" prescribed by the statute, the amount of the judgment is "paid" to the plaintiff.[1]

The issue is whether Thomas L. Cooper "paid" Peter and Ella Birznieks the amounts stated in judgments for possession when he mailed personal checks for those amounts to the Birznieks' lawyer on the last day of the time prescribed.

The district court held that the amounts so stated had not been duly paid. The circuit court and Court of Appeals affirmed. We reverse.

I

Cooper purchased two parcels of property under separate land contracts from the Birznieks. These summary proceedings to recover possession were commenced because of delinquency in payments. Judgments in favor of the Birznieks entered November 1, 1973 following a hearing, stating that Cooper had until January 30, 1974 to vacate the property, and that the Birznieks had the right to evict him on January 31, 1974 unless the "amount

---

[1] MCL 600.5744(6); MSA 27A.5744(6). See Part III for text.

owed", stated in the judgments, was "paid within 90 days, or appealed from within ten (10) days".[2]

On January 30, 1974, the last day the amounts stated could be paid, Cooper mailed personal checks in the requisite amounts, drawn on an out-of-state bank, to the Birznieks' lawyer. The envelope was postmarked January 30, 1974.

The lawyer wrote Cooper on February 1 that writs of restitution were issued by the court on that day. "The period of redemption expired January 30, 1974, and your payment was not made during the period of redemption. I am returning with this letter an envelope which we received February 1, 1974. I have not opened this letter and do not know what the contents are."

Cooper's motion to quash the writs of restitution was denied after a hearing during which the envelope was opened disclosing the two checks. Cooper testified that after the November 1 hearing the Birznieks' lawyer "gave me his card and said for me to mail the payments to his office". Peter Birznieks testified that because of problems with Cooper's checks he had refused to accept payment by personal check.[3]

The district judge held that personal checks were not proper tender and that mailing on the last day was not timely. She found that some of Cooper's checks for land contract installments had

[2] The court rule provides:

"A judgment for possession shall include a statement as to the date when a writ of restitution may issue unless he pays the amount due and costs, or unless he appeals within ten days." DCR 754.7.

Cooper makes no claim that the judgments do not comply with the court rule.

[3] Records of a savings and loan association, apparently acting for the Birznieks in collecting the payments, contain notations which tend to corroborate Birznieks' testimony that personal checks were not acceptable. Because we proceed on the basis of the district judge's finding that the Birznieks had so advised Cooper, it is not consequential whether those records were admissible.

not been honored on presentation, and noted that he did not deny Birznieks' claim that he had been instructed to pay such installments in cash or by money order and that there was no testimony that the two checks would have been honored if presented. She concluded that Cooper had no rational basis to believe that personal checks on an out-of-state bank would be accepted. Although, as she also noted, it was not disputed that the Birznieks' lawyer had instructed him "to mail his redemption payment to him", placing personal checks in the mail on the last day was not, in light of the past dealings of the parties, timely payment.[4]

## II

The judge thus appears to have credited Cooper's statement that the Birznieks' lawyer had instructed him to mail the amounts required to avoid forfeiture stated in the judgments to the lawyer. Cooper could reasonably have understood such a statement to mean that he had until the last day to mail the amounts owing.

In *Bilandzija v Shilts,* 334 Mich 421, 425; 54 NW2d 705 (1952), this Court declared that where a land contract vendor refused a check "on the sole grounds that it was too late" there was no "need for making a more formal and legal tender of cash". The concept so stated that when the creditor assigns one reason for refusing tender he may not thereafter rely on another is well supported in the Michigan cases.[5]

This case could therefore be decided on the basis

---

[4] On appeal, the circuit judge said that there was evidence supporting the findings of the district judge and no error in applying the law.

[5] See *Keller v Paulos Land Co,* 381 Mich 355, 359; 161 NW2d 569 (1968); *Murphy v Frank P Miller Co,* 229 Mich 162, 166-167; 200 NW 974 (1924); *Fosdick v Van Husan,* 21 Mich 567, 575 (1870).

that since i) Cooper could reasonably have understood the Birznieks' lawyer's statement to mean that mailing on the last day was sufficient, ii) checks for the amounts owing were so mailed, and iii) were refused on the insufficient ground that the mailing was not timely and without regard to the form of the tender (personal checks), the Birznieks cannot rely on the alternative ground that personal checks were sent.

Leave to appeal was not, however, granted to review the facts of this case; it was granted, rather, to consider the broader question of whether mailing a personal check on the last day of the time provided is timely payment under this statute.

## III

The statute provides:

"When the judgment for possession is for nonpayment of money due under a tenancy or for nonpayment of moneys required to be paid under or any other material breach of an executory contract for purchase of the premises, the writ of restitution shall not issue if, within the time provided, the amount as stated in the judgment, together with the taxed costs, is paid to the plaintiff and other material breaches of an executory contract for purchase of the premises are cured." MCL 600.5744(6); MSA 27A.5744(6).

The Court of Appeals declared that the tender must occur within the time provided, and that mailing on the last day was not timely. Regarding the form of tender, it declared that Cooper could not, in light of the Birznieks' previous refusal of personal checks, reasonably have expected that such checks would be accepted. The Court thus laid down a flat rule that the amount owing must

be actually received within the time provided,[6] but left open the question whether a form of tender other than cash would satisfy the statute. It indicated that resolution of that question might turn on whether the vendee or tenant had reason to expect, as a result of a course of dealing, that some form of tender other than cash would be acceptable to the vendor or landlord.[7]

The law of tender is replete with cases which depart from the generalization that tender is the payment in hand of legal currency to explore the fact-laden paths of the litigants' course of dealing. It is well established in contractual relationships that actual delivery of legal tender is not required

---

[6] The Court said that it did not agree with Cooper's effort to analogize "to insurance contracts and service of process in contending that the 'mailbox rule' should be applied such that his payments should be deemed received as of the date postmarked". It reasoned that "[t]his case significantly differs from [Cooper's] examples by involving a *judgment* and a fixed period prescribed by *statute* within which the right of redemption must be exercised". *Birznieks v Cooper,* 70 Mich App 482, 484-485; 245 NW2d 799 (1976) (emphasis in original).

The Court referred to *Gordon Grossman Building Co v Elliot,* 382 Mich 596, 603; 171 NW2d 441 (1969), where this Court, in construing provisions· of the Revised Judicature Act (MCL 600.3140; MSA 27A.3140) concerning circuit court foreclosure of mortgages and land contracts, declared that "absent some unusual circumstances" the statute should be strictly construed and its "clear and plain meaning" followed. The "clear and plain meaning" of "within the time provided" "requires actual receipt of tender before the time set for issue of the writ of restitution". *Birznieks v Cooper, supra,* p 485.

We note that in foreclosure proceedings the time required to obtain judgment is generally much more extended than in summary proceedings which may be concluded in a matter of weeks. Also, 6 or 12 months is provided to cure the default as contrasted with 90 days or 6 months in land contract forfeitures and as little as 10 days in landlord-tenant cases.

[7] The Court said that Cooper had no reason to believe, in light of the past dealings of the parties, that an uncertified personal check drawn on an out-of-state bank would be accepted as tender under the circumstance that checks for far smaller amounts than required to cure the defaults had been rejected. "Plaintiffs who had refused with cause to accept $75 personal checks from the defendant could not reasonably be expected to accept two checks totalling more than $1,300." *Birznieks v Cooper, supra,* pp 485-486.

where there is a course of dealing which justifies the debtor in believing that some other means *(e.g.,* mailing)[8] and form of tender *(e.g.,* personal check)[9] will suffice.

This excursion into the course of dealing, while justified in contract cases where it is sought to determine reasonable expectations, is not appropriate where rights are fixed by statute without regard to the expectations of the parties. Although vendor-vendee and landlord-tenant relationships are grounded in contract, a fixed meaning must, we agree with the Court of Appeals, be given the statutory term "within the time provided". A fixed meaning must also be given "paid" as used in this statute; therefore, whether personal checks were acceptable does not depend on whether Cooper could, as a result of a course of dealing, reasonably expect that they would be accepted.

A judgment for possession is, under the statute, subject to the redemption rights of the vendee or tenant. No agreement between the parties can deprive a vendee or tenant of his right to cure the default. The parties are beyond the contract. The

[8] See *Kerr v United States,* 108 F2d 585 (CA DC, 1939); *United Security Corp v Franklin,* 180 A2d 505 (Mun Ct App, DC, 1962).

Payment may be mailed where, by the creditor's express direction or assent, by the usual course of dealing between the parties, or by other facts from which such direction or assent may be inferred, the creditor has authorized the money to be thus delivered to him. 60 Am Jur 2d, Payments, § 17, p 622.

[9] See *Wayzata Enterprises, Inc v Herman,* 268 Minn 117; 128 NW2d 156 (1964); *Smith v American Mutual Liability Ins Co,* 174 So 2d 878 (La App, 1965).

The United States Court of Appeals for the Fifth Circuit explained,

"[t]his is a sensible result, especially considering that historically the law of negotiable instruments is an outgrowth of the Law Merchant in which law, far more than accommodating itself to business necessities, was rather the product of those business practices. No harm lurks in this blending of law and the needs of modern day commerce. If the check is dishonored on presentment to the drawee, no timely 'payment' has been made." *Duke v Sun Oil Co,* 320 F2d 853, 861-862 (CA 5, 1963).

vendee or tenant now exercises a statutory right, a right which can be diminished neither by the express nor the implied terms of the contract.

It would be anomalous if a vendee's or tenant's right to pay by personal check or to send it by mail on the last day for payment were dependent on the idiosyncrasies of a particular vendor-vendee or landlord-tenant relationship.

The sufficiency of tender under a statutory redemption provision should not depend on a lawyer's ability to amass evidence of a course of dealing. The statute gives the tenant and vendee a last chance to avoid forfeiture.[10] The outcome should not depend upon the presence or absence of a written record or of witnesses to the vendor's or landlord's instructions or objections during the course of the contract. Otherwise, one man's check mailed on the last day might reinstate his equity because his vendor or landlord is unable to prove a previous objection, while at the same time his neighbor's tender might be inadequate because his vendor or landlord can show routine objection to even the most minor deviation from contract terms. Principle, not providence, should be the governing factor.

While the construction of these statutory terms is not circumscribed by the course of the parties' dealing, it does not follow that the words should be given an entirely formalistic meaning or that the customary manner of dealing should not be reflected in the construction.

"Paid" may have a clear and plain meaning[11] to lawyers who understand that nothing other than

---

[10] "[R]ules and statutes dealing with redemption are regarded as remedial in character and should be given liberal construction and application to permit a property owner who can pay his debts to do so, and thus make his creditor whole, and save his property." *United States v Loosley,* 551 P2d 506, 508 (Utah, 1976).

[11] The Court of Appeals said that the words "within the time

actual delivery to the creditor of coin of the realm is legal tender. Land contract vendees and tenants, however, often are not represented by counsel; Cooper was not represented at the November 1 hearing.

The court rule provides that a judgment for possession shall "include a statement as to the date when a writ of restitution may issue unless he pays the amount due and costs". The apparent purpose is to inform the vendee or tenant of the amount required and the time within which to pay to avoid loss of possession and forfeiture.

If the remedial purpose of the statute and the informational purpose of the court rule are to be fully implemented, the words "within the time provided" and "paid" should be given a construction consonant with what vendees and tenants would understand although that departs from what lawyers and judges and those counseled by them might understand.[12]

provided" are clear and plain. It altogether begs the question to say that what is required to be done must be done "within the time provided". The question is what must be done and that depends on the construction of the word "paid".

[12] The importance of interpreting words with a proper sensitivity to their context was underscored by Professor Corbin: "No word or group of words in any language has an 'objective' meaning separate from and independent of its actual use by some person to convey his thought to another person". 3 Corbin on Contracts (1971 Supp), § 572B, p 199.

"The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the Legislature has in view." Enlich, Interpretation of Statutes, § 73, p 94.

"Of such statutes [remedial], as distinguished from penal statutes, more especially is it said that they are to be construed liberally, to carry out the purpose of the enactment, suppress the mischief and advance the remedy contemplated by the Legislature; *i.e.,* and this is all that liberal construction consists in—they are to be construed 'giving the words * * * the largest, the fullest, and most extensive meaning of which they are susceptible.' " Enlich, *supra,* § 107, p 142.

"Remedial statutes are liberally construed to suppress the evil and advance the remedy. * * *

In construing these words, we also have in mind that the meaning we give them affects a matter of practice and procedure, the administration of justice, not merely the administration of a contract. The last judicial act in most forfeitures in summary proceedings is issuance of a writ of restitution. It is ultimately for this Court to decide[13] the procedure for issuance of the writ that serves the Legislature's substantive purpose and the fair and efficient administration of justice.

## IV

A customary means of payment is by personal check. Persons who have checking accounts, an ever-growing percentage of the population, pay their bills by mailing personal checks, whether the debt is a charge account, a utility bill, rent, a mortgage or land contract payment, or a tax owing to government. The debtor is not expected to send a bank or certified check merely because the payment is important or even because it is delinquent.[14]

The means of transmittal customarily employed, whatever the form of payment, is the mails. The debtor is not expected to seek out the creditor and

"What is called a liberal construction is ordinarily one which makes the statutory rule or principle apply to more things or in more situations than would be the case under a strict construction." 3 Sutherland, Statutory Construction, § 60.01, p 29.

[13] Const 1963, art 6, § 5; see *Perin v Peuler (On Rehearing),* 373 Mich 531, 541; 130 NW2d 4 (1964); *In re 1976 PA 267,* 400 Mich 660, 662-663; 255 NW2d 635 (1977); *People v Jackson,* 391 Mich 323, 336, 346; 217 NW2d 22 (1974); *Taylor v Walter,* 384 Mich 114, 130; 180 NW2d 24 (1970).

[14] "Checks are a common means of payment. 'It is a matter of common knowledge that checks and drafts are usual and ordinary means of transferring money in the transaction of business.' " *Mefford v Security Title Insurance Co,* 199 Cal App 2d 578, 584; 18 Cal Rptr 877, 880 (1962).

put the instrument of payment in his hand.[15] Mailing on the last day is recognized for many purposes to be timely[16] and, as a result, it is widely thought that communications postmarked on the last date are timely.[17] We perceive no "clear and plain meaning"[18] requiring actual receipt in hand

---

[15] There are some exceptions, *e.g.,* options, but those are not customary transactions.

[16] "Where the insured has under the circumstances an absolute right of revival or reinstatement, his act of mailing an application for revival or reinstatement, together with payment of any necessary premiums or dues, can be deemed an effective reinstatement as of the time of mailing." 17 Couch on Insurance 2d, § 69:51, p 736.

[17] GCR 1963, 107.3(3) provides that "[s]ervice by mailing is complete upon mailing".

26 USC 7502(a)(1) provides:

"If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date * * * is * * * delivered by United States mail to the agency * * * the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be."

The legislative history of the foregoing provision indicates the following intent by Congress in enacting it:

"Present law provides that where a claim, statement, or other document, which is required to be filed by a specified date is properly mailed, the postmarked date is to be considered as the date on which it was filed. This provision, however, does not apply to a return or to a payment of tax. The bill extends this rule to tax returns and payments.

"The provision of this bill which permits the Secretary of the Treasury to require the filing of tax returns at service centers would technically require many taxpayers (for example, those in Hawaii) to mail their returns and payments at a much earlier date in order to insure delivery by the due date. The existing timely-mailing-timely-filing provision was enacted in 1954. At that time the rule was a new concept with which the Internal Revenue Service had had no experience. For this reason, the Service was concerned with applying it to returns and payments because of the unforeseen problems which it believed might develop. Experience with the present provision since 1954 has allayed these fears, and in fact, the Service has in practice generally treated returns and payments which were mailed before the due date as being filed or paid on time." Legislative History of PL 89-713, 1966 US Code Cong & Admin News, pp 3683-3684.

[18] Charge account agreements do, indeed, provide that service charges will be assessed unless the payment is received by the due date, but that is expressly so stated and not left to construction. More

by the end of the last day. While a lawyer would know that mailing on the last day does not constitute compliance in every situation, we seek, again, the meaning which vendees and tenants would understand.

Payments on land contracts and rental payments are routine transactions which are ordinarily accomplished by sending personal checks through the mails.

The meaning ascribed to these terms will govern not only land contract forfeitures, but also forfeitures of tenancies. While the time for redemption of a land contract is 90 days or 6 months, it is only 10 days for a tenancy.[19] The mails are not entirely dependable; what used to take one day for delivery may now take a week. To ascribe to the terms a meaning requiring actual delivery within the time provided would virtually require a tenant to make personal delivery or to mail payment almost immediately upon rendition of the judgment.

The large number of cases where, because of a course of dealing, personal checks or mailing within the time provided or both have been treated as timely payment demonstrates that there are no intractable problems in treating the mailing of personal checks as payment.[20] In those situations receipt of the check is deemed to constitute a conditional payment. The condition is that the check is honored on presentment at the bank; if the check is honored the payment is deemed to have been timely made.[21]

Nor is there any insuperable problem in a timely mailed letter arriving after the date of

importantly, the penalty for delay is a relatively small interest charge, not forfeiture of a substantial interest or equity.

[19] See fns 6 and 11, *supra*.

[20] See fns 8 and 9, *supra*.

[21] See fn 9, *supra*.

"forfeiture". Insurance policies which have expired are routinely reinstated upon receipt out of time of payment.

We conclude that Cooper "paid" the amounts owing "within the time provided" when he mailed personal checks for the amounts stated in the judgments to the Birznieks' lawyer.[22]

The writs of restitution are quashed. Reversed. Costs to appellant.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

RYAN, J. *(to affirm)*. I agree with Justice LEVIN that a fixed meaning must be given to the words "within the time provided" found in that section of the summary proceedings act which provides a statutory period of redemption for a land contract purchaser after a judgment for return of the property has been awarded to the land contract seller. MCL 600.5744(6); MSA 27A.5744(6). Beyond this singular point of agreement, however, we part company in this case.

I

The statutory provision which requires our construction reads as follows:

"When the judgment for possession is for nonpayment of money due under a tenancy or for nonpayment of moneys required to be paid under or any other material breach of an executory contract for purchase of the premises, the writ of restitution shall not issue if, *within the time provided,* the amount as stated in the

---

[22] Although Cooper so "paid" such amounts, since Birznieks did not deposit the checks Cooper is not now entitled to credit in such amounts against the amounts owing under the land contracts.

judgment, together with the taxed costs, is paid to the plaintiff and other material breaches of an executory contract for purchase of the premises are cured." MCL 600.5744(6); MSA 27A.5744(6). (Emphasis supplied.)

While ostensibly seeking to articulate the layperson's understanding of these words, Justice LEVIN expands the phrase "within the time provided" to include the time period provided plus the ordinary course of the mails. In so doing, he attempts, *sub silentio,* to adapt the so-called "mailbox rule" to a wholly inapposite situation.

The "mailbox rule" is a fiction of law created by judges to provide a fixed guide for determining when an offer has been accepted for the purpose of forming a legally enforceable contract. An early English case is frequently credited as being the first to enunciate this rule. In *Adams v Lindsell,* 1 B & Ald 681 (1818), the court held that where an offer to contract, calling for a promise, was made in a letter and the acceptance was also made by letter, a contract was formed as soon as the letter of acceptance was placed in the mail. Since 1818 this rule has been generally accepted in our country and has been accepted by this Court.[1]

Before extending this well-established rule to the instant case, however, its rationale deserves careful scrutiny to determine whether it is applicable to the instant situation.

The underlying reason for this rule has been stated as follows:

"[T]here is rational justification for the rule beyond the argument for certainty and stability [in the law of contract formation]. The situation involves two innocent

---

[1] *Kutsche v Ford,* 222 Mich 442, 447; 192 NW 714 (1923). This rule was also recognized in *Peck v Freese,* 101 Mich 321, 323; 59 NW 600 (1894).

parties, one of whom is subject to a burden in contracts by correspondence. If the acceptance was not completed until received by the offeror, he [the offeree] would have the burden. As the rule exists, the offeror may never know that an acceptance has taken place. As between the two parties, the offeror creates the power of acceptance and he may insist upon receiving the acceptance before the contract is formed. Since the offeror can control the risk involved whereas the offeree cannot, it does not seem unjust to place the burden upon him rather than the offeree." Grismore on Contracts (rev ed), § 48, pp 67-68. See also, 1 Corbin on Contracts, § 78, p 333, and 1 Williston on Contracts (3d ed), § 81, p 265.

It is clear that the mailbox rule was first adopted as a rule for distributing the risk of failure of the mails in timely communicating an acceptance between two innocent parties negotiating a contract. As between the two parties, it was felt most just to place the risk on that party (the offeror) who had the power to avoid any such risk by specifically stating in the offer that no contract would be formed until the acceptance was actually received.

Such a situation does not obtain here. When MCL 600.5744(6); MSA 27A.5744(6) comes into play, we do not have two "innocent" parties seeking to form an enforceable contract. To the contrary, we have a party who has been formally adjudged in default on an existing, valid land contract and who is thereafter statutorily provided a period of time within which to cure the default.

As between these parties, Justice LEVIN would read the statutory language as placing what risk there is of late receipt of the moneys found due and owing upon the land contract seller who has no power to control or avoid such a risk. The plain meaning of the language of the statute, as under-

standable to laypersons and lawyers alike, neither demands nor supports such a construction.

The individual purchaser who has been adjudged in default on a land contract under this statutory provision cannot fairly be likened to the individual who makes an ordinary bill payment on the due date.

Before a land contract seller can even proceed to judgment under the summary proceedings act, the purchaser must actually be in default in the moneys due under, or other material breach of, the land contract. MCL 600.5726; MSA 27A.5726.

After such default, which is presumably known by the defaulting purchaser who is a party to the contract, the seller must serve the purchaser with a notice of forfeiture and allow the purchaser at least 15 days thereafter to pay any moneys due under, or cure any other material breach of, the contract. MCL 600.5728; MSA 27A.5728.

If the default is not cured within that time period, the seller may then proceed to trial after first serving the purchaser with a summons giving notice of the trial date to be held within 15 days of issuance of the summons but not less than 10 days after the summons is served. MCL 600.5735; MSA 27A.5735.

Finally, after the seller obtains a judgment for possession of the premises, the purchaser is allowed an additional statutorily prescribed time period, of 90 days or 6 months, within which to cure the default. MCL 600.5744(3); MSA 27A.5744(3). If the default is not cured "within the time provided", a writ will issue restoring the seller to possession of the premises. MCL 600.5744(6); MSA 27A.5744(6).

At the time the judgment is obtained, the seller

no longer has any control over what follows. If the default is cured "within the time provided", possession of the premises will remain in the purchaser and the land contract will be reinstated. The purchaser, the party in default, controls the result. The risk distribution rationale of the mailbox rule does not support allowing such a purchaser to make "timely" payment by placing payment in the mails on the last day of the time provided.[2]

I cannot subscribe to the rule enunciated by Justice LEVIN. I read the plain meaning of the words "within the time provided" as being understood and understandable by purchasers in default on a land contract, as well as other lay persons, legislators and lawyers, to mean payment must be actually received by the seller on or before the last

---

[2] Furthermore, even if, as Justice LEVIN opines, "it is widely thought that communications postmarked on the last day are timely", a conclusion that need not necessarily follow from the basic premise stated, the situations he enumerates are inapposite to the instant situation facing the Court.

Timely payment of a judgment by a defaulting party to a land contract within a statutorily prescribed time limit is simply not analogous to regular payments of charge accounts, utility bills, mortgage or land contract installments, or taxes owing.

Nor is it analogous to a rule of law providing that payment of insurance premiums for reinstatement or revival of an insurance policy is effective as of the time of mailing, when the absolute right to such reinstatement or revival is provided either by contract or by virtue of a statute intended to regulate the practices of the insurance industry.

Finally, GCR 1963, 107.3(3) and 26 USC 7502(a)(1) do not necessarily support the conclusion that the general understanding is that the date of mailing controls the timeliness of an action. To the contrary, at least the court rule is equally susceptible to being interpreted as a recognition that date of mailing is not generally understood as controlling timeliness, and consequently any such rule must be expressly stated. Further, the statement from the legislative history of the Congressional act relies only on a stated, but unsupported, rationale that filing of claims, statements and other documents are considered timely if properly mailed on the specified dates. Filing of claims, statements or other documents are not akin to payment of a judgment for moneys due and owing under a land contract.

day provided for payment in the judgment awarded.

Clearly, in these land contract default situations, time is of the essence.[3] Thus, payment must be made within the time provided, or not at all. Unlike contractual situations, where time will generally be deemed to be of the essence only when the parties have expressly made it so, here time is of the essence because the Legislature has expressly made it so. This has been done in recognition of the fact that the seller with a valid judgment has been placed in the anomalous position of waiting a specified period of time without benefit of possession of the premises and with the risk that payment may not be made in that period of time.

## II

Because I hold that payment "within the time provided" requires actual receipt by the seller within that time, defendant did not make timely payment. Consequently, it is not necessary to decide whether the out-of-town, personal checks placed in the mail by defendant on the last day of the time provided constituted payment under the statute.

The Court of Appeals should be affirmed.

FITZGERALD, J., concurred with RYAN, J.

---

[3] For a discussion of when time will be considered to be of the essence see *Friedman v Winshall,* 343 Mich 647, 656; 73 NW2d 248 (1955); *Grade v Loafman,* 314 Mich 364, 367-368; 22 NW2d 746 (1946); 17A CJS, Contracts, § 502(1), p 762, § 504(1), p 789; 91 CJS, Vendor & Purchaser, § 104, p 999; 17 Am Jur 2d, Contracts, § 333, p 770, § 335, p 773.