## HOCH v HITCHENS

Docket No. 60749. Submitted October 7, 1982, at Grand Rapids.— Decided December 20, 1982.

Raymond A. Hoch and Eva B. Hoch sold a farm to Jessie Hitchens on a land contract which provided that the monthly payments would be due on the 14th day of each month. No place of payment was specified in the contract. Three years later, a foreclosure action was begun by the Hochs but was dismissed by a stipulation of the parties which also provided that any subsequent default in payment would immediately accelerate the balance due under the contract. Four years thereafter, a payment was not received by the Hochs until the 18th day of the month. The Hochs returned the payment and informed Hitchens of their intent to accelerate the balance due. The Hochs instituted this foreclosure action against Hitchens in Grand Traverse Circuit Court. The court, William R. Brown, J., found that the payment in question had been mailed on the 13th of the month but not received by plaintiffs on the 14th, when it was due. The court held that the payment was not timely, that defendant was in default and that the balance due was automatically accelerated. Defendant appeals. *Held:*

The actual delivery of legal tender in contractual relationships is not required where there is a course of dealing which justifies the debtor in believing that some other means and forms of tender will suffice. The trial court found that defendant had consistently mailed her payments on or before the 14th of the month and that the payments were regularly received by plaintiffs after that date. Furthermore, the risk of loss or delay in delivery of a payment made by mail must be borne by the creditor who has agreed to accept payments by mail, not the debtor.

Reversed.

1. Payment — Tender of Payment.

The actual delivery of legal tender in contractual relationships is not required where there is a course of dealing which justifies

Reference for Points in Headnotes
[1, 2] 60 Am Jur 2d, Payment §§ 11, 17.

the debtor in believing that some other means and forms of tender will suffice.

2. PAYMENT — PAYMENT BY MAIL — RISK OF LOSS.
   The risk of loss or delay in delivery of a payment made by mail must be borne by the creditor who has agreed to accept payments by mail, not the debtor.

*Witkop & McManus, P.C.* (by *Jeffrey J. McManus*), for plaintiffs.

*Mark A. Hullman,* for defendant.

Before: R. B. BURNS, P.J., and MACKENZIE and T. L. BROWN,* JJ.

R. B. BURNS, P.J. The parties stipulated to the following facts. On December 14, 1972, plaintiffs, as sellers, entered into a land contract with defendant, as purchaser, for the sale of a farm located in Blair Township, Grand Traverse County. The land contract provided for monthly installment payments of $500 on the 14th day of each month, beginning on January 14, 1973. The contract did not specify the place of payment. Since September, 1976, when a prior foreclosure action was settled by the parties, defendant has always mailed the monthly payments to plaintiffs' home. The contract also provided that upon default in a payment the seller could declare the remaining unpaid balance immediately due and payable. In 1976, plaintiffs instituted a foreclosure action which was dismissed by stipulation of the parties after a settlement was reached. The stipulation provided that a subsequent default in a payment under the land contract would immediately accelerate the balance due. The June, 1980, payment which was due on Saturday, June 14, 1980, was received by

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiffs on Wednesday, June 18, 1980. On Friday, June 20, 1980, plaintiffs' attorney mailed the payment back to defendant with a letter notifying her that plaintiffs had elected to accelerate the balance due. On July 7, 1980, this foreclosure action was commenced. Defendant continued to mail every monthly payment after June, 1980, on or before the date due.

A bench trial was held in circuit court. Several exhibits were admitted into evidence by stipulation, including the stipulation of facts summarized above; the land contract; the envelope addressed to plaintiffs in which the June, 1980, payment was sent and which bore a postmark of June 16, 1980; the June 20, 1980, "notice of acceleration" letter from plaintiffs' attorney to defendant with the associated envelope postmarked June 21, 1980; defendant's record of payments made to plaintiffs between September, 1976, and January, 1981; and the stipulation and order entered after settlement of the prior foreclosure action.

Plaintiffs testified that the payments on the land contract were due on the 14th of each month. However, plaintiffs received payments anywhere from the 14th to the 18th. Since the settlement of the prior foreclosure action in September, 1976, defendant had sent payments by registered mail to plaintiffs' home. When the June, 1980, payment did not arrive on Friday, June 14, 1980, plaintiffs decided that they would foreclose on the land contract. Plaintiffs met with their lawyer in the morning of June 18, 1980, and received defendant's June payment in the mail later that day. Plaintiffs did not cash the check but returned it to defendant. Plaintiffs had accepted and cashed all payments sent by defendant between September, 1976, and May, 1980, without objection, even

though some payments were received after the 14th of the month.

Chester Doe testified that he was an employee of defendant and her husband. He mailed defendant's check to plaintiffs each month by certified mail. He was always given the envelope containing the payment on the 12th or 13th of the month with instructions to mail it before the 14th. Late in the afternoon on Friday, June 13, 1980, Doe mailed the June payment at the post office. He paid the postal clerk $1.40 for the cost of sending the payment certified mail with a return receipt requested. However, he testified, the clerk who took the envelope seemed confused and did not appear to know what he was doing. Doe filled out the required receipt and left the envelope with the clerk but did not see him put the postage on the envelope. That same weekend, defendant's daughter was being married, and defendant and her husband went out of town after the wedding. On Monday, June 16, 1980, Doe found the envelope containing the payment in defendant's mailbox. It had been returned for postage due. The envelope had a standard 15-cent stamp on it, which Doe did not understand because he had paid for certified mail. Doe could not figure out why the envelope had been returned for postage due so he took it back to the post office that same afternoon but arrived just as the office was closing. Doe was upset that he was unable to straighten the matter out at that time, so he returned to the post office on Tuesday morning, June 17, 1980. Doe talked to a different postal clerk at that time, explaining that he had paid for certified mail and that the envelope had been improperly returned to sender for postage due. Defendant left the envelope with the clerk for mailing without paying any more

money. Although Doe received a receipt when he originally mailed the payment, he was unable to find the receipt for purposes of offering it into evidence at trial. Defendant did not become aware of the incident until June 18, 1980, when she and her husband returned home from out of town.

Ray DeVries, the Traverse City Postmaster, testified that the post office had a new window clerk working at the time the incident in question occurred. The new clerk made some errors while working at the window, including failing to put postage on some certified mail, which was returned. In addition, a subsequent audit indicated that the clerk had an overage in his account. DeVries also testified that it was possible for the events which Doe described to have occurred at the post office. While the improper postage on defendant's letter should have been found on Friday or Saturday, it was possible that it was not found or returned to defendant until Monday, June 16, 1980, thus explaining the postmark of that date.

The trial judge made findings of fact and conclusions of law as required by GCR 1963, 517. He found that since 1976 defendant had consistently mailed her payments on or before the 14th of the month and that the payments were regularly received by plaintiffs after that date. The judge further found that the June, 1980, payment was received by plaintiffs on June 18, 1980, and was postmarked on June 16, 1980.

The court also found that although the payment in question in this case was mailed on June 13, 1980, it was not received on Saturday, June 14, 1980, and was not delivered in the normal course. Therefore, the payment was not timely, defendant was in default, and the balance due was automatically accelerated.

It is well settled that, in contractual relationships, the actual delivery of legal tender is not required where there is a course of dealing which justifies the debtor in believing that some other means (e.g., mailing) and forms of tender (e.g., personal check) will suffice. *Birznieks v Cooper,* 405 Mich 319; 275 NW2d 221 (1979). The risk of loss or delay in delivery of a payment made by mail must be borne by the creditor who has agreed to accept payments by mail, not the debtor. 60 Am Jur 2d, Payment, § 17, p 622, states:

"Payment may be made by mail where, by the creditor's express direction or assent, by the usual course of dealing between the parties, or by other facts from which such direction or assent may be inferred, the creditor has authorized the money to be thus delivered to him.

*        *        *

"If an obligee has agreed to receive payment by mail, the risk of loss in the event of nondelivery falls on the creditor rather than on the debtor. The posting of a letter inclosing the remittance as directed constitutes a payment, although the letter is lost, and a delay of the remittance in the mail will not result in a forfeiture or loss of rights through nonpayment." (Footnotes omitted.)

Reversed.