394 P.2d 415

**Eli SOBEL, Appellant,**

**v.**

**Wilson A. JONES and Bernardine Jones, husband and wife, Appellees.**

**No. 7275.**

Supreme Court of Arizona.

In Division.

July 21, 1964.

Mesch, Marquez & Rothschild, Tucson, for appellant.

Wood & Platt, Coolidge, and Mr. Gove L. Allen, Mesa, for appellees.

UDALL, Chief Justice.

Appellant was the defendant in a suit for the reasonable value of services rendered and from an adverse judgment and award, brings this appeal.

The relevant facts are as follows. Plaintiff was employed as manager of defendant's trailer court near Mammoth from June 1954 until September 1958. He was paid a monthly salary of $300 for these services. Shortly after the job had begun, business at the trailer court grew slack and defendant indicated he could not afford to keep a manager. An agreement was then worked out whereby plaintiff would continue in the job and would perform additional work in building houses and apartments on the trailer court property. He would receive some compensation besides his wages as manager, but no amount was specified; the understanding, rather, was that "something extra" would be paid.

Over the course of the next four years, ten four-room apartments, eleven three-room apartments, a duplex and a storage room were constructed on the premises. Plaintiff drafted the plans for these buildings and supervised the work. He also performed some of the carpentry himself, using his own tools. Defendant purchased all the materials with the exception of one load of lumber for which plaintiff "advanced the money" by paying the supplier, later being reimbursed by defendant. It also appears that plaintiff hired the other workers and generally arranged for special services such as plumbing and electrical wiring. He consulted with defendant on such matters, however, and the record shows that on several occasions defendant himself hired plasterers and electricians and arranged, at least once, for private contractors to pour the concrete floors in one of the buildings.

Each week, defendant gave the plaintiff enough money to pay the other laborers on the job. Plaintiff maintained a record of the hours he worked and testified that whenever a building was finished, he would ask defendant to settle with him. These demands were put off by the defendant but he told plaintiff "not to worry"; said that business was bad and he was short of money but that he would "take care of" plaintiff. Demand was made again around October 1958 after the last building had been completed and the employment as manager of the trailer court had come to an end. At this point defendant refused to pay, denying that he owed plaintiff anything.

Two questions are presented. The first is whether plaintiff was acting as an employee or as an independent contractor. If the latter, the case is governed by A.R.S. §

32–1153 which precludes recovery for services as a contractor unless the plaintiff can first establish that he is licensed. Second, if this statute does not control and plaintiff is held entitled to compensation, whether any part of the claim is barred by the three-year statute of limitations.

The chief characteristic distinguishing an independent contractor from an employee is his right to control the manner of accomplishing the particular job. See Alexander v. Alexander, 51 Ariz. 269, 76 P.2d 223 (1938). The contractor typically agrees to do certain work for a specified or lump sum amount. Fox West Coast Theatres v. Industrial Commission, 39 Ariz. 442, 7 P.2d 582 (1932). The question in both of the cited cases was whether an employment relationship existed for purposes of the workmen's compensation law. Nevertheless, we think the same standards have equal validity in any case in which the parties' intent is relevant. Moreover, we held in Southwest Lumber Mills v. Industrial Commission, 60 Ariz. 199, 134 P.2d 162 (1943), that the definition of an independent contractor in the Workmen's Compensation Act is a restatement of the common law as set out in Swansea Lease, Inc. v. Molloy, 20 Ariz. 531, 183 P. 740 (1919).

Keeping these tests in mind, we believe that the totality of circumstances obtaining throughout the four-year period establishes that the intended relationship here was one of employer and employee. Plaintiff's "control" over the building operations remained subject at all times to the dominion of the owner. Defendant hired some of the workers. Others were hired by plaintiff but he sometimes consulted defendant. For example, he asked defendant whether it would be satisfactory to hire a glazer who had agreed to work for "all the beer he could drink." While plaintiff went through the motions of actually paying the laborers, defendant furnished the money. In other words, they were his employees, not plaintiff's.

As we pointed out previously, defendant hired some of the electricians and plasterers, and a crew to pour concrete, without even notifying plaintiff that he had done so. Decisions concerning the type and grade of such materials as lumber and fixtures were always left to defendant. While the plaintiff sometimes ordered the materials, defendant invariably paid for them. Clearly, we think, these facts show that plaintiff was not a contractor but rather a foreman or manager on the job.

At any rate, it is plain that A.R.S. § 32–1153 was not meant to preclude recovery in this type of case. The statutory purpose is to prevent unscrupulous or financially irresponsible contractors from deceiving and taking advantage of those who engage them to build. See Hunt v. Douglas Lumber Co., 41 Ariz. 267, 17 P.2d 815

(1933). It often happens that fly-by-night organizations begin a job and, standing in danger of losing money, leave it unfinished to the owner's detriment. Or they may do unsatisfactory work, failing to comply with the terms of their agreement. The licensing requirement is designed to curb these evils; the license itself is some evidence to the owner that he is dealing with an honest and qualified builder.

In the case at bar, defendant knew he was not hiring a licensed contractor. The parties never understood that plaintiff would be bound to complete the job on his own responsibility. Had he left before the project was completed, defendant would have suffered no loss. The other workers and the independent contractors would have remained and the price of materials would not have changed. A replacement for plaintiff could have been hired but nothing in the record shows that even that step would have been essential. We conclude that recovery is not precluded by A.R.S. § 32–1153 and that plaintiff is entitled to the reasonable value of the services performed.

█ Nor is any part of the claim barred by the statute of limitations. Plaintiff contends that the claim arose when the last building was completed in 1958 and that the action was thus filed well within the three-year statutory period. Defendant's position, on the other hand, is that if plaintiff was an employee, his claim for wages accrued weekly, like those of the other workers. We note that the claim is based not on contract but on *quantum meruit* for the value of services rendered. We held in Evans v. Mason, 82 Ariz. 40, 308 P.2d 245, 65 A.L.R. 2d 936 (1957), that "The cause of action under such circumstances does not arise until termination of such services."

█ Finally, defendant argues that the award of eighty dollars as compensation for managing the trailer court during the first eight days in September was not supported by any evidence. The only services during that month, it is urged, were performed by plaintiff's wife in collecting rent and utility monies and writing receipts therefor. It should be noted that Jones and his wife were joined as plaintiffs in the action. In count four of their complaint, they alleged that they were both parties to the management contract. There was ample evidence from which the trial court could have found that this was the case and that Mrs. Jones' services in September were rendered accordingly.

Judgment affirmed.

LOCKWOOD, V. C. J., and STRUCK-MEYER and BERNSTEIN, JJ., concur.