646 P.2d 263

Michael MATCHA and Janet B. Matcha,
Plaintiffs-Appellees,

v.

Robert M. WACHS; Arizona Helicopter
Applicators, Inc., an Arizona corpora-
tion, aka Sta-Lei Corporation, an Arizo-
na corporation; Arizona Helicopters,
Inc., an Arizona corporation; Southwest
Airlines, Inc., an Arizona corporation,
Defendants-Appellants.

No. 15732–PR.

Supreme Court of Arizona,
In Banc.

May 3, 1982.

Rehearing Denied June 15, 1982.

Robbins & Green by Jeffrey P. Boshes,
Jeffrey M. Proper, Phoenix, for plaintiffs-
appellees.

O'Connor, Cavanagh, Anderson, West-
over, Killingsworth & Beshears by Jeffrey
B. Smith, Larry L. Smith, Phoenix, for de-
fendants-appellants.

FELDMAN, Justice.

This declaratory action arose out of a
dispute regarding priority between two sets
of would-be redemptioners from a mort-
gage foreclosure sale. The appellees, Mi-
chael and Janet Matcha, brought suit
against the Maricopa County Sheriff and
Wachs and the other appellants (hereinafter
referred to as Wachs) seeking a declaratory
judgment that they and not Wachs were
entitled to redeem the property sold at the
foreclosure sale. The trial court found that
Wachs had not perfected his right to re-

deem and entered summary judgment in favor of Matcha. Wachs appealed. On appeal, the court of appeals reversed the judgment of the trial court, finding that Wachs had substantially complied with the requirements of the applicable statutes and therefore was entitled to redeem the property. *See Matcha v. Wachs,* 132 Ariz. 402, 646 P.2d 287 (1981). We granted review in order to decide the issue of whether substantial compliance with the requirements of the redemption statutes (A.R.S. §§ 12–1282—12–1289) is sufficient to perfect a lien creditor's right to redeem. Having concluded that such compliance is sufficient, we approve and modify the decision of the court of appeals, and reverse the judgment of the superior court.

### FACTS

Title to the real property which is the subject of this action was originally held by Schulz subject to the following encumbrances, listed in their order of priority:

1. A mortgage to First National Mortgage Association (FNMA);
2. A deed of trust to Wachs in the amount of $628,648.00;
3. A deed of trust in favor of Jerry Lanyon dba Lanyon's Lawn Service;
4. A judgment in favor of the law firm of Beer, Kalyna & Simon, P.C. (the law firm) in the amount of $2,581.35. This judgment was eventually assigned to Matcha.

When Schulz defaulted on his mortgage payments, FNMA foreclosed naming Schulz, Wachs, Lanyon and the law firm as defendants. The sheriff's sale on foreclosure was held on February 9, 1978, and the property was sold to FNMA. Following the foreclosure sale, Schulz as owner/mortgagor had six months within which to redeem the property. *See* A.R.S. § 12–1282(B). If he failed to do so, the junior lienholders, in order of seniority, each had five days to exercise their right to redeem by paying the amount due to the purchaser at the foreclosure sale, *plus* the amount due to those senior lienholders who had previously redeemed the property. *See* A.R.S. § 12–1282(C). The last lienholder to redeem is entitled to the sheriff's deed and thereafter holds title free and clear from the claims of all whose interests have been foreclosed. *See* A.R.S. § 12–1286.

Within the six-month period following the foreclosure sale, Schulz took no steps toward redeeming the property. Wachs, the senior lienholder, filed a timely notice of intent to redeem, specifying the amount of the lien and the order of its priority. He served a copy of the notice of intent to redeem on the sheriff as required by A.R.S. § 12–1284,[1] but failed to serve with it the documents required by A.R.S. § 12–1287.[2] i.e., a certified copy of the record of his lien and an affidavit showing the amount actually due on the lien. The law firm also filed a notice of intent to redeem. It served a copy on the sheriff and also served the sheriff with the documents required by § 12–1287. Thus, within the six-month period, Wachs complied with A.R.S. § 12–1284, but not § 12–1287; the law firm complied with both statutes.

On August 9, 1978, the six months within which the mortgagor/owner could redeem expired. Two days later, Wachs served the sheriff with copies of the documents re-

---

1. A.R.S. § 12–1284 provides:

   To entitle a subsequent lienholder [i.e., holder of a lien junior to the one which was foreclosed] to redeem he shall within the applicable period of redemption as provided in § 12–1282, file with the county recorder ... a notice in writing stating that he intends to redeem and specifying his lien and the amount thereof and its order of priority, and shall deliver a copy thereof to the sheriff
   . . . .

2. A.R.S. § 12–1287 provides:

A. A redeeming creditor shall deliver to the officer or person from whom he seeks to redeem and serve *with his notice to the sheriff*:

   1. A copy of the docket of the judgment under which he claims the right to redeem, certified by the clerk of the court ..., or if he redeems a mortgage or other lien, a copy of the record thereof, certified by the recorder.

   \* \* \* \* \* \*

   3. An affidavit showing the amount actually due on the lien. (Emphasis supplied.)

quired by § 12–1287 and tendered a check in the amount of $19,518, which was the amount due the purchaser at the foreclosure sale. Thereafter, Matcha, initially on the law firm's "behalf" and then as its assignee, also made a timely tender of the sum due. He did not, however, tender the additional $628,648 which constituted the amount of the lien held by Wachs. He claimed, rather, that Wachs had failed to comply with A.R.S. § 12–1287 and was not entitled to redeem. After the sheriff's office rejected his tenders, Matcha brought this suit, claiming that by non-compliance with A.R.S. § 12–1287, Wachs had forfeited his right to redeem, thus permitting a junior lienholder to redeem and acquire title without discharging the senior lien.

The question before us, then, is whether Wachs lost his right to redeem because he failed to serve the sheriff with the documents required by A.R.S. § 12–1287 within six months after the foreclosure sale or because, when he finally did serve the necessary documents, he served copies rather than the originals. We answer both questions in the negative.

At the outset, we agree with the trial court's determination that Wachs did not make a timely tender of the documents required by A.R.S. § 12–1287. While that section does not specifically state the time within which the documents must be filed, it does require that they be served "with [the] notice to the sheriff." The word "notice" is used only twice in the redemption statutes; therefore, we conclude that the word "notice" referred to in § 12–1287 can only mean the "notice" specified in § 12–1284. Since under the circumstances of this case the notice required by § 12–1284 must be filed within six months after the foreclosure sale, Wachs' service of the § 12–1287 documents six months and two days after the sale was not timely.

We disagree, however, with the trial court's conclusion that Wachs lost his right to redeem either by failing to file the § 12–1287 documents within six months after the foreclosure sale or by serving the sheriff with copies rather than originals.

In *Western Land & Cattle Co. v. National Bank of Arizona*, 29 Ariz. 51, 58–59, 239 P. 299, 301–02 (1925), this court acknowledged that the statutory right of redemption is a legal right which must be exercised in the manner required by statute, but upheld the right of the creditor to redeem the property despite the fact that in perfecting its right to redeem it had deviated slightly from the statutory requirements. In so holding, the court stated:

> The contention [by the junior lienholder] substantially is that although a redemptioner files his notice in perfect good faith and believing as a matter of law and fact he has correctly stated the amount of his lien and his order of priority, yet, if it afterward appears, at the end of bitterly contested litigation that he may have been in error as to the amount or order of priority, his right of redemption fails entirely. Such a construction of a beneficial statute, meant for the protection of lienholders, would equal in severity the rule required in the interpretation of a penal law. We do not think such was the intent of the legislature. If the lienholder in good faith does the things specified in the statute, the mere fact that it is later determined he was in error as to either amount of lien or order of priority, does not defeat his right of redemption, but merely requires that he pay the correct amount in the order determined by the law, when he finally does redeem.

Thus, in the past, minor deviations from the requirements of the redemption statutes have not resulted in a forfeiture of the right to redeem. It is true that in *Hummel v. Citizen's Building & Loan Ass'n*, 38 Ariz. 54, 59, 296 P. 1014, 1016 (1931), we stated: "[i]f the right given by statute is not exercised strictly according to the terms of the statute, it is lost . . . ." However, in *Hummel*, the creditor-redemptioner was more than one year late in filing his notice of intent to redeem. Thus, he hardly attempted compliance with the most important requirement of the redemption statutes. We do not read *Hummel* as authority for the

principle that, notwithstanding the lack of prejudice to junior lienholders, any minor deviation from the statutory requirements will result in the forfeiture of the right to redeem.

■ Whether a statute should be given a strict or equitable interpretation must be decided in accordance with the legislature's intent in enacting that statute. Redemption statutes are remedial in nature and exist for the dual purpose of insuring the property will bring a fair price at a sheriff's sale and that, if the mortgagor does not redeem, his property will be applied to payment of debts in the order of the priority to which his various creditors are entitled. *United States v. MacKenzie*, 510 F.2d 39, 41 (9th Cir. 1975); *Mutual Life Insurance Co. of New York*, 88 Ill.App.3d 952, 955–56, 43 Ill.Dec. 829, 832–33, 410 N.E.2d 962, 965–66 (1980); *Birznieks v. Cooper*, 405 Mich. 319, 330 n.10, 275 N.W.2d 221, 225 n.10 (1979); *Silbernagel v. Goin*, 31 Or.App. 545, 547–48, 570 P.2d 1011–12 (1977). It was not the "intent of the legislature" that the redemption statutes be given the severe application "required in the interpretation of a penal law." *Western Land & Cattle Co. v. National Bank of Arizona*, 29 Ariz. at 58, 239 P. at 302. Accordingly, we hold that in the absence of prejudice to the other parties, substantial compliance with the requirements of §§ 12–1282—12–1289 will be sufficient to effect a redemption.

It may be argued that the adoption of an equitable rule of substantial compliance which considers the nature and extent of the deviation from the statutory plan, the fulfillment or nonfulfillment of the statutory purpose, and the prejudice or lack of prejudice to junior creditors will result in increased litigation with regard to redemptive rights. This will lead to occasional delay in determining title after foreclosure. However, the establishment of any rule which permits the application of equitable principles invites controversy over what constitutes an equitable result in any particular case. We feel, however, that such a

danger, if it be one, is better tolerated than the injustice that can result from the inflexible application of the redemption statutes. As the court stated in *Osborne Hardware Co. v. Colorado Corp.*, 32 Colo.App. 254, 258, 510 P.2d 461, 463 (1973) (quoting *Plute v. Schick,* 101 Colo. 159, 162, 71 P.2d 802, 804 (1937)).

> "The purpose of the redemption law is to help creditors recover their just demands, nothing more. Equity has always prevented the redemption laws from being used as 'an instrument of oppression when substantial justice can be done without enforcing them to the letter.'"

*See also, Silbernagel v. Goin,* supra; *United States v. Loosely,* 551 P.2d 506 (Utah 1976); *Mutual Life Insurance Co. of New York v. Chambers,* 88 Ill.App.3d 952, 43 Ill.Dec. 829, 410 N.E.2d 962 (1980); *Hruby v. Steinman,* 374 Ill. 465, 30 N.E.2d 7 (1940); *Mollerup v. Storage Systems International,* 569 P.2d 1122 (Utah 1977); *Gordon Grossman Building Company v. Elliott,* 382 Mich. 596, 171 N.W.2d 441 (1969). These cases support the doctrine that although the right of redemption is a legal right, equitable principles may be utilized to relieve a redeeming lienholder from minor deviations and thus prevent injustice.[3]

■ We do not hold that every deviation will be acceptable. There are instances where even a minor deviation from the statutory scheme may cause prejudice to the rights of a junior lienholder or other party. In such a situation, equitable principles dictate that the doctrine of substantial compliance will not relieve the redemptioner and that the loss shall fall on the party which caused it. *Salsbery v. Ritter,* 48 Cal.2d 1, 306 P.2d 897 (1957).

■ Turning to the facts of this case, we find that Wachs substantially complied with the requirements of the redemption statutes by filing his notice of intent to redeem within six months after the foreclosure sale as required by A.R.S. § 12–1284 and by serving copies of the documents required by

---

**3.** Our statutory law also supports that conclusion. A.R.S. § 1–211(B) provides:

Statutes shall be liberally construed to effect their objects and to promote justice.

A.R.S. § 12–1287 on the sheriff two days thereafter. Admittedly, Wachs did not serve the documents required by § 12–1287 within the time specified by statute. The purpose of § 12–1284 is to notify other lienholders who may intend to redeem, thus giving them information which they will need regarding priorities and amounts, in the event they wish to exercise their rights. *S. & M. Trust Co. v. Valley Lumber Co.*, 5 Ariz.App. 373, 427 P.2d 354 (1967); *Salsbery v. Ritter*, supra. The other purpose is to give the sheriff the information necessary to determine when he is free to deliver his deed. *S. & M. Trust Co. v. Valley Lumber Co.*, supra. We agree with the court of appeals that the purpose of the requirement of A.R.S. § 12–1287 that documents be served on the sheriff and the party from whom redemption is to be made is to enable them to verify that the redeeming creditor actually has the lien interest required in order to permit redemption. Here, Wachs provided all parties with the necessary information in a timely manner by complying with § 12–1284. His late attempt to comply with § 12–1287 caused no harm. The sheriff was able to verify his lien and both the law firm and Matcha had all the information they needed. The law firm's original notice of intent to redeem acknowledged the Wachs lien, its priority and its amount. Neither the law firm nor Matcha has ever contested the validity, priority or amount of Wachs' lien, except for the claim of forfeiture by non-compliance with the exact terms of the statute. As the court of appeals stated, to hold that such a minor deviation could work a forfeiture of a valid claim would be to "honor form over substance." It would also allow a junior lienholder to reap a substantial windfall, would produce no benefit—and probably some harm—to Schulz, the original property owner, and would produce a result contrary to the purposes for which the redemption statutes were enacted.

Having made a good faith effort to redeem, having substantially complied with the redemption statutes and no prejudice having resulted to the junior lienholder, Wachs was entitled to redeem. Since

Wachs made a tender of the correct amount to the sheriff within the five days allotted to him by A.R.S. § 12–1282(C) after expiration of Schulz' redemption right, Wachs was a redemptioner and Matcha was not entitled to redeem without tendering the amount of Wachs' lien, as required by A.R.S. § 12–1282. Since Matcha did not make such a tender, the trial court erred in ruling against Wachs and in favor of Matcha.

The opinion of the court of appeals is modified, the judgment of the trial court is reversed and the case is remanded with instructions to proceed in accordance with this opinion.

GORDON, V. C. J., and CAMERON, J., concur.

HAYS, Justice, dissenting:

I dissent.

I have no quarrel with the facts set forth in the majority opinion nor with the interpretation of the pertinent statutes. Our sole issue in this case is whether in Arizona we shall require only substantial compliance with the redemption statutes. It is on this issue I disagree and for the following reasons.

In *Hummel v. Citizens Building & Loan Association*, 38 Ariz. 54, 296 P. 1014 (1931), the Arizona Supreme Court stated the right of redemption "is not governed by the principles of equity, but by the terms of the statute." *Id.* at 57, 296 P. at 1015. Today the majority adopts a new rule of law which employs equity principles, *i.e.*, substantial compliance in applying the redemption statutes.

It is a bit ironic that in October of last year a unanimous court handed down *Smith Pipe & Steel Co. v. Mead, Trustee*, 130 Ariz. 150, 634 P.2d 962 (1981), a case interpreting the Arizona Mechanics' and Materialmen's Lien Statutes. There, summary judgment was granted for the owner and against a materialman because of an erroneous legal description. The improvements had been placed on the *south* parcel and the Notice

and Claim of Lien gave the legal description of the north parcel. The record was devoid of any indication that the owner was prejudiced and no third-party rights were involved. Doesn't this situation cry out for equity?

This court applied the statute strictly and affirmed the trial court's order granting summary judgment to the owner.

Obviously, the statutes for redemption and the mechanics' and materialmen's lien statutes differ. The analogy, however, is obvious.

Section 12–1287 serves a vital purpose in the redemption process. It allows the sheriff and the other lienholders to determine the validity of the unverified allegations contained in the § 12–1284 notice. This is important since the sheriff must determine whether the liens are valid, the amount due on the liens, and the order of priority for redemption, at or before the time the initial redemption period lapses. The legislature has spoken regarding the steps a subsequent lienholder must take in order to perfect his redemption rights. The majority exceeds its authority by recognizing an equitable exception to the statute, and also renders § 12–1287 virtual surplusage. For these reasons I dissent.

HOLOHAN, Chief Justice, concurring: I concur in the dissent of Justice Hays.