[No. 51536-1. En Banc. February 6, 1986.]

GESA FEDERAL CREDIT UNION, *Petitioner,* v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, *Respondent.*

*Gladstone & Swisher,* by *Wayne Gladstone,* for petitioner.

*Minnick, Hayner & Zagelow, P.S.,* by *H. H. Hayner* and *Tom Scribner,* for respondent.

UTTER, J.—This case comes to the court on summary judgment motions involving the respective claims of a purchaser at a foreclosure sale, Mutual Life Insurance Company of New York (purchaser), and a junior lienholder, GESA Federal Credit Union (redemptioner), in the re–

demption of foreclosed farm property. The parties dispute the legal consequences of purchaser's failure to file a statement of irrigation tax assessment payments with the county auditor. *See* RCW 6.24.150. While we affirm the Court of Appeals judgment for the purchaser, we do so on different reasoning. We hold instead that, absent a redemptioner's demonstration of prejudice, the purchaser who provides the redemptioner with actual notice of the costs of redemption substantially complies with the section .150 notice requirement.

On January 15, 1981, purchaser foreclosed its mortgage on farm property and, on February 27, 1981, purchased the property at a sheriff's sale for $1,042,164.88. Because purchaser's interest was subordinate to Badger Mountain Irrigation District liens, on January 21, 1981, purchaser paid the delinquent irrigation assessments with interest ($244,424.96). Under the terms of two leases, purchaser was obliged to provide water for the lessees by paying subsequent irrigation assessments when due (June 30, 1981—$117,852.82; November 30, 1981—$116,815.50).

On December 30, 1981, redemptioner advised the sheriff of its intention to redeem the property. Redemptioner had already received from purchaser one itemized statement of the redemption price on November 2, 1981, and would receive a second statement on January 4, 1982. On January 22, 1982, purchaser provided to redemptioner its report of the redemption amount which redemptioner acknowledged in a letter dated January 27, 1982. On February 19, 1982, redemptioner redeemed the property by paying $1,677,339, the amount purchaser had reported to the sheriff was required for the redemption.

Prior to the redemption, purchaser did not file with the county auditor a statement, pursuant to section .150, showing that purchaser had paid the irrigation assessments. In a subsequent accounting action, redemptioner sought to obtain a refund of the amount of the assessments it had paid as part of the redemption price. The redemptioner argued that purchaser had lost its right to reimbursement

by failing to file the proper assessment payment statement with the county auditor. The Court of Appeals upheld the trial court ruling that purchaser's failure to file an assessment payment statement pursuant to section .150 did not preclude reimbursement from redemptioner for that amount. *GESA Fed. Credit Union v. Mutual Life Ins. Co.*, 39 Wn. App. 875, 882, 696 P.2d 607 (1985).

Redemptioner raises the following issue: Will purchaser's failure to file with the county auditor a statement of its paid irrigation assessment taxes, as required by section .150, bar purchaser's right to recover those assessments from a subsequent redemptioner?

### THE NOTICE REQUIREMENT—RCW 6.24.150

RCW 6.24.140 sets out redemption rights in general. Section .150 sets forth the procedures to be followed where successive redemptions occur. The latter statute ends with the following sentences:

> If the purchaser or redemptioner shall pay any taxes or assessments, or have or acquire any such lien as herein mentioned, he must file a statement thereof with the auditor of the county where said property is situate before the property shall have been redeemed from him, otherwise the property may be redeemed without paying such tax, assessment or lien. Such statement shall be recorded by such auditor.

RCW 6.24.150. Redemptioner contends that section .150 requires purchaser to have filed a statement of assessments paid by purchaser before redemptioner would be required to reimburse purchaser for the assessments paid. Brief of Appellant, at 18–27. Out of the $1,677,339 redemption price, redemptioner, therefore, seeks reimbursement of $506,782.74, which reflects the portion of the price allocated to the assessments and accrued interest.

The Court of Appeals held that purchaser's failure to file a payment statement with the county auditor was not fatal to its reimbursement from redemptioner. The court reached this conclusion by reasoning that RCW 6.24.140, which provides the procedure for redemption generally, does not

require filing. The court also concluded that the language in RCW 6.24.150, that property "*may be* redeemed", is permissive language indicating that a filing is not required. The court noted that redemptioner had actual notice of assessments paid by purchaser, and that redemptioner would have had to pay the assessments had purchaser not done so. *GESA,* 39 Wn. App. at 882.

The right to redeem property sold under execution is a creature of statute and depends on the provisions of the statute creating the right. *Graves v. Elliott,* 69 Wn.2d 652, 419 P.2d 1008 (1966); *Kuper v. Stojack,* 57 Wn.2d 482, 358 P.2d 132 (1960). Where the language of a statute is plain, unambiguous, and certain, there is no room for judicial construction because the meaning will be discovered from the wording of the statute itself. *People's Org. for Wash. Energy Resources v. Utilities & Transp. Comm'n,* 101 Wn.2d 425, 679 P.2d 922 (1984). *Accord, Rhoad v. McLean Trucking Co.,* 102 Wn.2d 422, 686 P.2d 483 (1984).

RCW 6.24.150 is a clear, unambiguous statute respecting redemption rights. It provides that the purchaser or redemptioner (here, purchaser) "*must*" file a statement with the auditor; "*otherwise*", the property may be redeemed from him without payment of an assessment. The Court of Appeals construed "may be redeemed" as permissive language applying to the filing of a statement by the purchaser. This language, however, in light of the rest of the sentence in which it appears, seems only to apply to the redemptioner's act of redemption.

Purchaser suggests, nonetheless, that RCW 6.24.150 does not apply because this case does not involve a successive redemptioner. While this court has said that a purchaser's redemption rights, unlike those of a redemptioner, are controlled by the time constraints found in RCW 6.24.140 and not section .150, *Seattle Med. Ctr., Inc. v. Cameo Corp.,* 54 Wn.2d 188, 191, 339 P.2d 93 (1959), that does not mean that section .150 has no application to purchasers.

As noted above, the language in the last two sentences of RCW 6.24.150 requires "the *purchaser* or redemptioner" to

file a statement. (Italics ours.) This thus encompasses more than just the successive redemptioner case. By express reference to the "purchaser," it appears that the Legislature intended the filing requirement to apply to a purchaser, such as Mutual Life Insurance Company of New York, even though it is buried in the provision captioned "Successive redemptions."

While RCW 6.24.150 contemplates the procedures to be followed where successive redemptions occur, by its plain language the provision also contemplates that the required filing of a payment statement applies to *purchasers* as well as to redemptioners. Moreover, there appears to be no good reason to apply the provision to redemptioners, but not to purchasers.

Purchaser raises two further defenses, however. The first of these is that redemptioner, in electing to redeem under section .190, is limited in its accounting action to contesting the expenses incurred in the use of the property during the redemption period, as well as the rents and profits received therefrom. This construction is untenable because it forces the redemptioner to choose between challenging the assessments *or* challenging the expenses, rents, and profits calculations. No redemptioner should be put to an election of which of the closely related interests arising out of the same transaction he will protect. While there is no case law on point, the Court of Appeals followed 2 Washington State Bar Ass'n, *Real Property Deskbook* § 41.78 (1981) to conclude that sections .140 and .190 "are not mutually exclusive, but work in tandem." *GESA*, at 879.

More compelling, however, is purchaser's claim that the purpose of the notice requirement was met by directly serving redemptioner with a statement of purchaser's assessment payments. A leading discussion on Washington redemption law observes:

> That actual notice does not cure the failure to record does not appear just. The purpose of recording is to inform subsequent redemptioners of the price which they must be prepared to pay. . . . If a person seeking to

redeem has actual notice of the amounts which would be required, no further notice should be necessary.

Comment, *The Statutory Right of Redemption in California,* 52 Calif. L. Rev. 846, 851 n.38 (1964).

The argument can be made that adopting an equitable rule of substantial compliance will foment litigation and occasionally delay title determinations after foreclosure. *See Matcha v. Wachs,* 132 Ariz. 378, 381, 646 P.2d 263 (1982). The court may be asked to consider "the nature and extent of the deviation from the statutory plan," the degree to which the statutory purpose has been fulfilled, and the amount of prejudice the junior creditor has suffered. *Matcha,* at 381. Nevertheless, in holding that the senior lienholder had substantially complied with the redemption statute in spite of untimely filing of documents with his notice to redeem, the *Matcha* court stated that "[r]edemption statutes are remedial in nature" and, therefore, should be liberally construed. *Matcha,* at 381. *See also, e.g., Silbernagel v. Goin,* 31 Or. App. 545, 570 P.2d 1011, 1012 (1977); *United States v. Loosley,* 551 P.2d 506, 508 (Utah 1976); *Hart v. Brown,* 404 Ill. 498, 89 N.E.2d 370, 373 (1949); *Household Fin. Corp. v. Bacon,* 58 Or. App. 267, 648 P.2d 421, 422 (1982).

▮▮ This attitude could be argued to be directly contrary to that expressed in some of our cases where this court has declared redemption rights to be creatures of statute and, therefore, to be strictly construed. *See Kuper,* 57 Wn.2d at 483. While the *Matcha* court acknowledged this same tradition in its own case law, *Matcha,* at 380, it concluded that the administrative advantages of inflexibly applying the statute did not outweigh the resulting injustice. *Matcha,* at 381. We agree with the *Matcha* approach and overrule the *Kuper* line of cases to the extent they are not in harmony with our present holding.

To say, without more, that redemption rights are "creatures of statute," to be strictly construed, is to paint with too broad a brush. The redemption statute involves a number of provisions, some of which confer a statutory right,

*e.g.,* RCW 6.24.130, and some of which establish a procedure by which that right is perfected, *e.g.,* RCW 6.24.145. "A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right." *Miebach v. Colasurdo,* 102 Wn.2d 170, 181, 685 P.2d 1074 (1984). Moreover, it has long been the practice in this state to liberally construe remedial legislation to accomplish legislative purpose. *See, e.g., State v. Douty,* 92 Wn.2d 930, 936, 603 P.2d 373 (1979); *Peet v. Mills,* 76 Wash. 437, 136 P. 685 (1913).

We find section .150, in relevant part, to be a remedial provision. Unlike some of its earlier predecessors, *see, e.g.,* Laws of 1897, ch. 50, § 15, p. 75, the provision does allow for successive redemptions, *Ford v. Nokomis State Bank,* 135 Wash. 37, 237 P. 314 (1925), which could be read as conferring a substantive right. The notice clause, however, is like any other timely filing requirement; it "is not a substantive element of a right of action, but is merely a procedural step necessary to enforce a claimant's right to recover." *Agency Budget Corp. v. Washington Ins. Guar. Ass'n,* 93 Wn.2d 416, 422, 610 P.2d 361 (1980).

Furthermore, we have characterized as remedial the companion redemption notice provision, RCW 6.24.145. *Miebach,* 102 Wn.2d at 181. In *Miebach,* we declined to retroactively apply the new provision because to do so would have severely impinged existing rights based on the prior confirmation of a judicial sale. *Miebach,* 102 Wn.2d at 181. As redemptioner concedes, however, it has suffered no damage by the purchaser's technical omission and there is no request for retroactive application of new legislation. Redemptioner, thus, has no basis for seeking an exception to our usual treatment of remedial statutes.

We therefore join those courts that have found redemption statutes to be remedial in nature, designed "to help creditors recover their just demands, nothing more." *Osborn Hardware Co. v. Colorado Corp.,* 32 Colo. App. 254, 258, 510 P.2d 461 (1973). To this end, the provision should be liberally construed. *See Matcha,* at 381; RCW 1.12.010.

Where a party, in exercising its redemption right, commits a technical but harmless procedural error, a forfeiture requirement is not only unjust, but inconsistent with the very purpose of the statute. *See, e.g., Matcha,* at 381 (collecting cases). To fail to recognize that giving actual notice substantially complies with the section .150 notice requirement would amount to the exaltation of form over substance. *Silbernagel v. Goin, supra.* Forfeitures are neither favored at law, *e.g., Markland v. Wheeldon,* 29 Wn. App. 517, 520, 629 P.2d 921 (1981), nor at equity, *e.g., Esmieu v. Hsieh,* 20 Wn. App. 455, 460, 580 P.2d 1105 (1978), *aff'd,* 92 Wn.2d 530, 598 P.2d 1369 (1979), and this court should be especially loath to exact a forfeiture for the most formal of procedural violations.

There is no dispute that redemptioner received timely notice of the amount required for redemption. Purchaser made available to redemptioner the information required by section .150 months before purchaser was obligated to file with the county auditor. Moreover, redemptioner concedes that it has not been prejudiced by purchaser's failure to give notice through the auditor. Redemptioner also concedes that purchaser's timely payment of the assessments actually saved redemptioner from having to pay 12 percent interest for delinquency, rather than the 8 percent interest required under section .150. Reply Brief of Appellant, at 14. Under these circumstances, there appear few, if any, policy reasons or equitable considerations to justify refunding to GESA the amount of the irrigation tax assessments. For this reason we hold that actual notice to a redemptioner substantially complies with the section .150 notice requirement where the redemptioner cannot show prejudice suffered from the opposing party's minor deviation from the statute.

Allowing "actual notice" to constitute substantial compliance with the section .150 notice requirement, where there is no prejudice suffered, does not raise the concerns this court recently addressed in *Nitardy v. Snohomish Cy.,* 105 Wn.2d 133, 712 P.2d 296 (1986). In *Nitardy,* the court

was asked to consider whether service on the County Executive's secretary was sufficient to subject the county to the court's jurisdiction. Section .150, however, raises neither jurisdiction issues, nor the specter of determining which other county officials would also be suitable to accept service and thereby expose the county to liability. Here, however, we note that giving actual notice to one redemptioner would not suffice for notice to a subsequent redemptioner.

We therefore affirm the Court of Appeals decision, but on a different basis than that expressed in the opinion, *see GESA,* 39 Wn. App. at 882. Section .150 does require a purchaser seeking reimbursement to give notice of the costs of redemption prior to that redemption. We hold further, however, that actual notice substantially complies with that statutory requirement. The other issues raised in GESA's briefs were, to the extent possible, adequately resolved by the Court of Appeals and have not been accepted for review by this court.

DOLLIVER, C.J., and BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.