900 P.2d 1210

AESTHETIC PROPERTY MAINTE-NANCE, INC., d/b/a APM Landscape, Plaintiff/Appellant,

v.

CAPITOL INDEMNITY CORPORATION, a Wisconsin corporation, Defendant/Appellee.

No. CV–94–0327–PR.

Supreme Court of Arizona, En Banc.

Aug. 16, 1995.

Jones, Skelton & Hochuli by William D. Holm, Eileen J. Dennis, Phoenix, for Aesthetic Property Maintenance, Inc.

Jennings & Haug by William F. Haug, James L. Csontos, Phoenix, for Capitol Indem. Corp.

## OPINION

MARTONE, Justice.

We are asked to decide whether substantial compliance with our contractor licensing statute can satisfy the licensing prerequisite to a civil action under A.R.S. § 32–1153. We hold that it can.

## I. BACKGROUND

Aesthetic Property Maintenance, Inc. (APM) is in the landscaping business. It became a licensed contractor in January, 1990, and renewed its license in December, 1990. It had recently moved and included its new address with the renewal.

In late 1991, the Registrar of Contractors erroneously sent a renewal notice to APM's old address. APM's forwarding order with the post office had since expired. APM therefore did not receive the notice and did not renew its license, which was suspended by operation of law on January 1, 1992. APM discovered its suspension in late June, 1992, and immediately sought and received reinstatement. During the lapse, APM maintained its general liability insurance, workers' compensation insurance and contractor's license bond.

APM entered into a contract with Howell Constructors, Inc. in mid-December, 1991, (and thus before suspension) to do landscaping and irrigation work on a City of Glendale park. APM finished that project on March 5, 1992 (during suspension). In mid-January, 1992, (during suspension) it entered into another contract with Howell to do similar work for Dysart Junior High School. APM finished that project on August 25, 1992 (after reinstatement).

Because Howell failed to pay in full, APM brought an action against it and its surety, Capitol Indemnity Corporation (Capitol), for the balances due. Howell defaulted. Capitol raised the defense of nonlicensure. Acknowledging a preference for ruling otherwise, but believing that it was constrained by our cases, the superior court granted judgment in favor of Capitol on APM's and Capitol's cross-motions for summary judgment.

The court of appeals affirmed. It shared the trial court's concern, but felt similarly limited by earlier case law. It held that A.R.S. § 32–1153 barred APM from recovering for either project because APM was not licensed at the time the cause of action arose for the Glendale project and at the time it entered into the Dysart contract. We granted review to decide whether § 32–1153 is a bar to an action even where there has been substantial compliance with the licensing statute.

APM concedes that it was not licensed during portions of critical times as required by § 32–1153, but argues that we should follow cases from other states and adopt a

substantial compliance test. Capitol argues that § 32–1153 requires strict compliance.

## II. ANALYSIS AND RESOLUTION

### A. *Arizona's Licensing Scheme*

A.R.S. §§ 32–1101 to –1170.03 set forth the requirements for obtaining and keeping a contractor's license. Among other things, contractors must qualify under § 32–1122, maintain a surety bond or cash deposit, § 32–1152, and not commit any act or omission listed in § 32–1154(A). A.R.S. § 32–1153 sets forth prerequisites for bringing an action for unpaid work. It provides:

> No contractor as defined in § 32–1101 shall ... commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

Although we have not decided whether substantial compliance with the licensing statute satisfies § 32–1153, we have applied the statute before.

In *Northen v. Elledge,* 72 Ariz. 166, 232 P.2d 111 (1951), a contractor knowingly allowed his license to expire before finishing a project, and made no effort to renew it. The owner defaulted. Northen brought an action in which the owner raised the predecessor to § 32–1153 as a defense. . That earlier statute only required licensing at the time the cause of action arose, and we thus rejected Northen's argument that his license at the time he entered into the contract was adequate. *Id.* at 171, 232 P.2d at 116. We also rejected his argument that equity favored his recovery, and noted that if contract performance were

the only test, the statute would have little effect. *Id.* at 173, 232 P.2d at 118. But Northen never argued that in addition to performing his contract he substantially complied with the licensing statute. Nor could he have in light of the facts of the case. He knew his license had expired, but continued to work and never bothered to renew it, even up to the time of bringing the action. Thus, this court did not have an opportunity to decide whether substantial compliance with the licensing statute is adequate under § 32–1153. The issue is therefore one of first impression.[1]

### B. *Substantial Compliance and Statutory Purpose*

Our cases suggest that whether a rule of strict or substantial compliance applies depends upon which rule promotes legislative purpose. In *Matcha v. Wachs,* 132 Ariz. 378, 646 P.2d 263 (1982), we held that substantial compliance with mortgage redemption statutes was "sufficient to perfect a lien creditor's right to redeem." *Id.* at 379, 646 P.2d at 264. A lienholder tardily filed documents required to redeem foreclosed property and improperly filed copies instead of originals. We said that "[w]hether a statute should be given a strict or equitable interpretation must be decided in accordance with the legislature's intent in enacting that statute." *Id.* at 381, 646 P.2d at 266. The statute's purpose was to insure that property is sold at a fair price and that creditors are paid in order of priority. A rule of substantial compliance would not defeat that purpose. We considered "the nature and extent of the deviation from the statutory plan, the fulfillment or nonfulfillment of the statutory purpose, and the prejudice or lack of prejudice to junior creditors" whom the statute was designed to protect. *Id.; see also State v. McEuen,* 42

---

1. Nor has the court of appeals been asked to decide the question of substantial compliance. Neither *B & P Concrete v. Turnbow,* 114 Ariz. 408, 561 P.2d 329 (App.1977) nor *Desert Springs Mobile Home Ranches, Inc. v. John H. Wood Constr. Co.,* 15 Ariz.App. 193, 487 P.2d 414 (1971) were substantial compliance cases. In *Desert Springs,* the contractor's license was suspended for having failed to post a license bond. The contractor made no attempt to comply. In *B & P Concrete,* the contractor never had a license at all. In *Desert Springs* the court of appeals held that the contractor could rely on an individual's license. In *B & P Concrete* the court of appeals held otherwise, in partial reliance on legislative rejection of *Desert Springs.* But in neither case was substantial compliance *by the contractor* raised. Nor would either case satisfy the substantial compliance test we adopt.

Ariz. 385, 392, 26 P.2d 1005, 1008 (1933) ("The first and most important principle of statutory interpretation is that the intent of the legislature is to be ascertained and followed.... The second, at least in Arizona, is that statutes shall be liberally construed to effect their objects and to promote justice.").

We have found substantial compliance adequate in a variety of statutory settings. *E.g., Pima County v. Cyprus–Pima Mining Co.,* 119 Ariz. 111, 114, 579 P.2d 1081, 1084 (1978) (allowing substantial compliance with statute requiring payment of disputed taxes because "spirit of the law" was satisfied); *State v. Town of Benson,* 95 Ariz. 107, 108, 387 P.2d 807, 808 (1963) (only substantial compliance with annexation statute required; "[a]bsolute and literal compliance with the statute would result in defeating the purpose of the statute in situations where no one has been or could be misled"); *Leeson v. Bartol,* 55 Ariz. 160, 167, 99 P.2d 485, 489 (1940) (copy instead of duplicate copy allowed; to hold otherwise "defeats rather than preserves the law's intent").

But we have required strict compliance when less would defeat a statute's purpose. For example, in *Estate of Ball v. American Motorists Ins. Co.,* 181 Ariz. 124, 888 P.2d 1311 (1995), we required an insurer to strictly comply with A.R.S. § 20–259.01(B) where failure to do so would compromise the protection afforded an additional insured under the statute.

■ In short, whether substantial or strict compliance is required is largely a question of which test best promotes legislative purpose. *See* A.R.S. § 1–211(B) ("Statutes shall be liberally construed to effect their objects and to promote justice.").

C. *Legislative Purpose*

Capitol argues that the purpose of § 32–1153 is to penalize contractors who do not strictly follow the licensing statute. But our cases are to the contrary.

■ We have repeatedly held that the purpose of § 32–1153 is to protect the public from unscrupulous, unqualified, and financially irresponsible contractors. *E.g., Westinghouse Elec. Corp. v. Rhodes,* 97 Ariz. 81, 84, 397 P.2d 61, 64 (1964) ("Statutes relating to licensing requirements for contractors are regulatory measures designed for protection of the public against the unscrupulous and unqualified."); *Sobel v. Jones,* 96 Ariz. 297, 300, 394 P.2d 415, 418 (1964) ("The statutory purpose [of A.R.S. § 32–1153] is to prevent unscrupulous or financially irresponsible contractors from deceiving and taking advantage of those who engage them to build."). We have found no case to support the argument that § 32–1153 was designed to punish those who did not strictly comply with its provisions. Indeed, *Northen* itself acknowledged that the statute was designed to protect the public "against unscrupulous and unqualified persons purporting to have the capacity, knowledge and qualification of a contractor." *Northen,* 72 Ariz. at 172, 232 P.2d at 115.

■ Several states with similar statutes have adopted rules of substantial compliance. In *Koehler v. Donnelly,* 114 N.M. 363, 838 P.2d 980 (1992), problems with mail delivery prevented a contractor from receiving several renewal notices. Its license was ultimately suspended. Five months later, the contractor learned of the cancellation and had its license reinstated. The contractor had entered into a construction contract with Koehler while its license was suspended. Koehler failed to pay and used the same statutory defense that Capitol raises here. In reaffirming its substantial compliance test, the court noted that the statute's purpose, like ours, was to protect "the public from 'incompetent and irresponsible builders.' " *Id.* 838 P.2d at 982. The elements of its test, taken from *Latipac, Inc. v. Superior Court,* 64 Cal.2d 278, 49 Cal.Rptr. 676, 411 P.2d 564 (1966), are: "(1) the contractor held a valid license at the time of contracting; (2) the contractor readily secured a renewal of that license; and (3) the responsibility and competence of the contractor's managing officer was officially confirmed throughout the period of performance." *Koehler,* 838 P.2d at 982. The court noted that each factor need not be present and that "the true test is whether the contractor's substantial compliance with the licensing requirements satisfies the policy of the statute." *Id.* (internal quotations and citation omitted).

Other states have based their own substantial compliance tests on *Latipac*, but the underlying theme is that substantial compliance is adequate when it satisfies the general policy or purpose of the statute. *McNairy v. Sugar Creek Resort, Inc.*, 576 So.2d 185 (Ala. 1991) (requiring less than strict compliance does not defeat statutory purpose); *Jones v. Short*, 696 P.2d 665, 667 (Alaska 1985) ("The proper interpretation of the registration provisions is one which carries out the legislative intent and gives meaning to every part of the statute without producing harsh and unrealistic results."); *Nevada Equities, Inc. v. Willard Pease Drilling Co.*, 84 Nev. 300, 440 P.2d 122, 123 (1968) ("We shall not condone a forfeiture in the absence of any ascertainable public policy requiring us to do so."); *Murphy v. Campbell Inv. Co.*, 79 Wash.2d 417, 486 P.2d 1080, 1084 (1971) (contractor "substantially complied with the requirements crucial to the underlying design intended by the legislature"); *Govert Copier Painting v. Van Leeuwen*, 801 P.2d 163, 170 (Utah App. 1990) (Utah allows "an unlicensed contractor to recover 'from one who is otherwise protected from the harm the licensing requirements were designed to prevent'") (citation omitted).

We thus conclude that substantial compliance can be adequate under § 32–1153.

### D. *Factors and Application*

■ The cases are suggestive of some of the factors relevant to whether there has been substantial compliance. Is suspension by operation of law under § 32–1125(A) or for cause under § 32–1154(A)? Did the Registrar's failure contribute to noncompliance?

Because the statute is designed to protect the public, the public must in fact be protected while the license is under suspension. Was the contractor financially responsible while its license was suspended? A contractor does this by maintaining its liability insurance, surety bond, workers' compensation insurance, and any other requirement imposed by the Registrar. Failing that, there can be no substantial compliance.

Did the contractor knowingly ignore the registration requirements? If so, this is fatal to a claim of substantial compliance. Did the contractor, immediately upon learning of the license suspension or other statutory noncompliance, apply to reactivate the license or remedy the statutory violation? This is a necessary condition to a finding of substantial compliance. Finally, did the failure to comply with our statute prejudice the party the statute seeks to protect?

The facts here are not disputed. APM filed a statement of facts in support of its motion for summary judgment under Rule IV(f), Unif.R.Prac.Super.Ct. APM asserted that: (1) its license was suspended for failure to pay the annual fee; (2) it maintained its general liability insurance, workers' compensation insurance, and its contractor's license bond [2] while its license was suspended; and (3) it paid a late fee and had its license reinstated immediately upon learning of the suspension. Capitol did not dispute any of these facts, but did object to their relevance. It thus admitted them. Rule 56(e), Ariz. R.Civ.P. *See, e.g., Sato v. Van Denburgh*, 123 Ariz. 225, 228, 599 P.2d 181, 184 (1979) (failure to controvert properly supported motion for summary judgment with affidavits or other evidence means admission of movant's version of facts); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2739 (1983).

APM satisfies the substantial compliance test. APM's license was suspended by operation of law for its failure to timely pay a renewal fee. As soon as it learned of the suspension, it paid a late fee and had the license reinstated. The Registrar contributed to the problem by failing to honor APM's notice of change of address. At all times during the suspension, APM remained financially responsible by keeping current its surety bond, workers' compensation insurance, liability insurance, and financial documents. Capitol was not prejudiced by APM's suspension.

### III. CONCLUSION

Because APM substantially complied with our licensing statute, it was entitled to sum-

---

**2.** Capitol did not dispute the facts associated with the validity of the bond, but did claim the bond was legally ineffective during APM's suspension. We reject that argument.

mary judgment and Capitol was not. The judgment of the superior court is reversed and the case is remanded to that court for entry of judgment in favor of APM and against Capitol. The memorandum decision of the court of appeals is vacated.

APM is entitled to its reasonable attorneys' fees under A.R.S. § 34–222(B) upon compliance with Rule 21, Ariz.R.Civ.App.P.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.